UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KHOA NGUYEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BARNES & NOBLE, INC., and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 8:12-cv-0812-JST (RNBx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION, DENYING MOTION TO STAY AS MOOT, AND VACATING HEARING DATE** |

1

1    Before the Court is a Motion to Compel Arbitration ("Motion"), as well as a Motion
2 to Stay Proceedings pending Final Resolution of that Motion, filed by Defendant Barnes &
3 Noble, Inc. ("Barnes & Noble" or "Defendant"). (Doc. 10; Doc. 21.)  Plaintiff filed an
4 opposition (Doc. 11), and Defendant has replied (Doc. 14). Having read and considered the
5 parties' papers and heard oral argument on July 20, 2012, the Court DENIES Defendant's
6 Motion. Accordingly, the Court DENIES AS MOOT Defendant's Motion to Stay and the
7 Court VACATES the hearing on Defendant's Motion to Stay set for August 31, 2012.

## I.     BACKGROUND

On April 17, 2012, Plaintiff filed his Complaint alleging violations of:  (1) the New York Unfair Competition Law § 349; (2) the New York False Advertising Law § 350; (3) Breach of Contract under New York's UCC; (4) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (5) the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and (6) California's Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.* (Compl., Exh. A, Doc. 1.)  Defendant removed Plaintiff Kevin Khoa Nguyen's ("Plaintiff's" or "Nguyen's") Complaint to federal court on May 18, 2012. (Doc. 1.)

Plaintiff alleges that "[o]n or about August 21, 2011, Mr. Nguyen was on the Internet and saw an advertisement for 16 GB HP TouchPad Tablets being sold on Defendant's website, barnesandnoble.com, for a price of $101.95."  (Compl. ¶ 9.)  Plaintiff alleges that he purchased two of these HP TouchPad Tablets and "submitted his credit card information, as well as his email address and shipping address to Defendant" and shortly thereafter "received a confirmation email from Barnes & Noble stating that his order had been placed and further promoting barnesandnoble.com." (*Id.*)  Plaintiff states that he received a Confirmation Number and an Order Confirmation stating that "[y]our credit card will be charged when your order ships." (*Id.*)  Plaintiff states that the next day he received an email from Barnes & Noble "informing him that it was cancelling his order,

2

1 and would not be shipping him the TouchPads for the advertised price." (*Id.* ¶ 10.)
2 Plaintiff alleges that due to "Barnes & Noble's representations, as well as the delay in
3 informing him it would not honor the sale," Plaintiff was "unable to obtain an HP Tablet
4 during the liquidation period for the discounted price." (*Id.*) As a result, Plaintiff was
5 "forced to rely on substitute tablet technology, which he subsequently purchased . . . [at]
6 considerable expense." (*Id.*)

On May 25, 2012, Defendant filed this Motion, alleging that by placing an order on
Barnes & Noble's website, Plaintiff accepted the website's Terms of Use and therefore
agreed to arbitrate claims arising from his use of barnesandnoble.com. (Mot. at 7-8.)

The Terms of Use states that: "**By visiting any area on the Barnes & Noble.com Site, creating an account, making a purchase via the Barnes & Noble.com Site . . . a User is deemed to have accepted the Terms of Use.**" (Rowland Decl., Exh. 1, at p. 4.) The Terms of Use contain a dispute resolution section which, Defendant argues, requires that any claims arising from use of the Barnes & Noble.com Site or Service be subject to arbitration.[1]

---

[1] The relevant section states:

**XVIII. DISPUTE RESOLUTION**
Any claim or controversy at law or equity that arises out of the Terms of Use, the Barnes & Noble.com Site or any Barnes & Noble.com Service (each a "Claim"), shall be resolved through binding arbitration conducted by telephone, online or based solely upon written submissions where no in-person appearance is required. In such cases, the arbitration shall be administered by the American Arbitration Association under its Commercial Arbitration Rules (including without limitation the Supplementary Procedures for Consumer-Related Disputes, if applicable), and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
. . . .
Any Claim shall be arbitrated or litigated, as the case may be, on an individual basis and shall not be consolidated with any other party whether through class action proceedings, class arbitration proceedings or otherwise.
(footnote continued)

3

1       Plaintiff opposes the Motion, arguing, among other things, that he did not agree to
2 arbitrate his claims. (Opp'n at 1-7.) Specifically, Plaintiff notes that the Terms of Use
3 hyperlink is located at the bottom of the Barnes and Noble webpages from which a
4 customer makes a purchase. (Opp'n at 1.) Defendant also acknowledges that the Terms of
5 Use hyperlink "is located on the bottom left corner of each webpage contained within
6 barnesandnoble.com." (Mot. at 2 (citing Rowland Decl. at ¶¶ 3-5).) Plaintiff reasons that
7 he did not "affirmatively assent" because "it is not necessary to click on the Terms of Use
8 in order to make a purchase, nor does B&N specifically direct consumers to the Terms
9 prior to making a purchase." (Opp'n at 5-6.) Plaintiff further reasons that a customer does
10 not need to "click a confirmation that the Terms of Use have been read and/or agreed to,
11 and . . . Plaintiff did not in fact, click on the link, or read and agree to the Terms of Use."
12 (*Id.* at 6.)

      Based on the manner by which Defendant made known its Terms of Use, the Court concludes that Plaintiff did not agree to arbitrate his claims.

## II.     LEGAL STANDARD

### A. The Federal Arbitration Act

      The Federal Arbitration Act provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. "The

---

> . . . .
> Each of the parties hereby knowingly, voluntarily and intentionally waives any right it may have to a trial by jury in respect of any litigation (including but not limited to any claims, counterclaims, cross-claims, or third party claims) arising out of, under or in connection with these Terms of Use. Further, each party hereto certifies that no representative or agent of either party has represented, expressly or otherwise, that such a party would not in the event of such litigation, seek to enforce this waiver of a right to jury trial provision. Each of the parties acknowledges that this section is a material inducement for the other party entering into these Terms of Use.
> (Rowland Decl., Exh. 1, at p. 8.)

court's role under the Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). But "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). The FAA reflects "both a 'liberal federal policy favoring arbitration' . . . and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion,* ---U.S.---, 131 S. Ct. 1740, 1745 (2011) (citations omitted).

In these analyses, a court may consider evidence outside of the pleadings, such as declarations and other documents filed with the court, using "a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d. 796, 804 (N.D. Cal. 2004)). *See also Hadlock v. Norwegian Cruise Line Ltd.*, No. 10-0187-AG (ANx), 2010 WL 1641275, at *1 (C.D. Cal. April 19, 2010); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1104 n.1 (9th Cir. 2010) ("We take . . . facts from the First Amended Complaint, on file in the district court, and declarations filed in support of and in opposition to the motion to dismiss. All are part of our record.").

**B.     Choice of Law**

The parties, either explicitly or implicitly, agree that the dispute regarding the validity of the arbitration provision should be governed by the laws of the State of New York. (Mot. at 2-3; Opp'n at 7). However, any application of New York law stems from the as-yet-

undetermined proposition that parties agreed to Defendant's Terms of Use.[2] The Court need not resolve this "chicken and egg" question. While the choice of law issue may have significance later in the litigation, the question of Plaintiff's assent to the Terms of Use, and, consequently, the validity of the arbitration provision, does not hinge on whether New York or California law applies.[3]

**III.      DISCUSSION**

At issue is a so-called "browsewrap" agreement. Browsewrap agreements, as opposed to clickwrap agreements, are defined as "terms and conditions, posted on a Website or accessible on the screen to the user of a CD-ROM, that do not require the user to expressly manifest assent, such as by clicking 'yes' or 'I agree.'" *Sw. Airlines Co. v. Boardfirst, L.L.C.,* No. 3:06-CV-0891-B, 2007 WL 4823761 at *4, n.4 (N.D. Tex. Sept. 12, 2007) (citations omitted). Defendant argues that like clickwrap agreements, "[c]ourts . . . have consistently enforced browsewrap agreements against both businesses and

---

[2] Indeed, Defendant uses as a "binding judicial admission" Plaintiff's allegation in the Complaint that his breach of contract claim is governed by New York's UCC. (Reply at 8 (citing Compl. at ¶ 34).) Specifically, Defendant states that because Plaintiff seeks to benefit from the Terms of Use "by asserting the choice of law provision contained therein" (Reply at 11), he should be required to arbitrate his claims under the doctrine of equitable estoppel. (Reply at 10-11.) Defendant cites *Washington Mut. Fin. Group, LLC v. Bailey,* 364 F.3d 260, 268 (5th Cir. 2004) for the proposition that a plaintiff cannot claim the benefit of an agreement and simultaneously avoid its burdens. (Mot. at 9; Reply at 11). *Washington* and the instant case are inapposite, however, because *Washington* involved a third party, namely the wife of one of the defendants, claiming the benefits of an agreement without the requisite obligation. Further, there was no dispute that an agreement had been made between the primary parties, but involved the issue of whether that agreement would apply to the third party. The Court therefore declines to extend the holding of *Washington* to the facts of this case and finds that Plaintiff is not equitably estopped from arguing that he is not bound by the arbitration agreement at issue.

[3] "Federal courts sitting in diversity look to the law of the forum state when making choice of law determinations." Hoffman v. Citibank (S.D.), N.A., 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam). "When an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." Id. Using the Restatement approach, the Court concludes that there is no fundamental conflict between California and New York law. *Compare Nayal v. HIP Network Services IPA, Inc.,* 620 F.Supp. 2d 566, 569 (S.D.N.Y. 2009) *with Larian v. Larian*, 123 Cal.App.4th 751, 759-60.

1 consumers." (Reply at 6). The dispositive issue, however, is not the "browsewrap" or
2 "clickwrap" label; rather it is whether Plaintiff had constructive notice of the terms of the
3 agreement and therefore agreed to be bound by them. *See Sw. Airlines Co.,* 2007 WL
4 4823761 at *5 ("[T]he validity of a browsewrap license turns on whether a website user
5 has actual or constructive knowledge of a site's terms and conditions.").

6 *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17 (2d Cir. 2002), is instructive. In
7 *Specht,* the plaintiffs downloaded free software from Netscape's website. (*Id.* at 20.) The
8 issue was whether plaintiffs were bound by the arbitration agreement contained in a
9 License Agreement to which they had never expressly assented. (*Id.*) The court stated that
10 the license terms were not "immediately displayed" and that "plaintiffs could not have
11 learned of the existence of those terms unless, prior to executing the download, they had
12 scrolled down the webpage to a screen located below the download button." (*Id.*) The
13 court held: "We disagree with the proposition that a reasonably prudent offeree in
14 plaintiffs' position would necessarily have known or learned of the existence of the . . .
15 license agreement prior to acting, so that plaintiffs may be held to have assented to that
16 agreement with constructive notice of its terms." (*Id.* at 30.) The court concluded that
17 "plaintiffs' bare act of downloading the software did not unambiguously manifest assent to
18 the arbitration provision contained in the license terms." (*Id.* at 20.) The same is true here.
19 Defendant did not position any notice even of the *existence* of its "Terms of Use" in a
20 location where website users would necessarily see it, and certainly did not give notice that
21 those Terms of Use applied, except within the Terms of Use.

22 The case perhaps most directly on point is *Hines v. Overstock.com, Inc.,* 668
23 F.Supp. 2d 362 (E.D.N.Y. 2009). Similar to the instant case, *Hines* involved a consumer
24 action with an arbitration clause contained in a browsewrap agreement accessible via
25 hyperlink. In *Hines*, the plaintiff stated that "she was never advised of the Terms and
26 Conditions and could not even see the link to them without scrolling down to the bottom of
27 the screen-an action that was not required to effectuate her purchase." *Id.* at 367. The
28

7

court held that the defendant "has not carried its burden of demonstrating the existence of a valid arbitration agreement because Defendant has shown neither that Plaintiff had notice of the Terms and Conditions, nor that a reasonable user of the website would have." *Id.* at 366.  In conclusion, the *Hines* court aptly stated:

> Hines . . . lacked notice of the Terms and Conditions because the website did not prompt her to review the Terms and Conditions and because the link to the Terms and Conditions was not prominently displayed so as to provide reasonable notice of the Terms and Conditions. Very little is required to form a contract nowadays-but this alone does not suffice.

*Id.* At 367.  Likewise, Defendant cannot show that Plaintiff had notice of the Terms of Use or that he affirmatively assented to those terms, therefore, Defendant cannot show that Plaintiff entered into an agreement to arbitrate his claims.

The cases cited by Defendant are readily distinguishable.  In *Register.com, Inc. v. Verio, Inc.,* the court enforced the provisions of a browsewrap agreement citing crucial differences from *Specht* in its reasoning.  356 F.3d 393, 402 (2nd Cir. 2004).  The court upheld the district court's grant of a preliminary injunction finding that plaintiff Register was likely to succeed on the merits of its breach of contract claim.  The court concluded that Verio was a daily repeat user that received notice of Register's terms with each transaction.  *Id.*  The court stated that, "Verio visited Register's computers daily . . . and each day saw the terms of Register's offer."  *Id.*  In addition, "Verio admitted that, in entering Register's computers . . . it was fully aware of the terms on which Register offered the access."  *Id.*  The facts in *Register.com* are clearly distinguishable from our own in that, unlike the Plaintiff in the case at hand, defendant Verio was well aware of the contract terms.

In *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, the Ticketmaster.com website specifically warned users that, "[u]se of this website is subject to express Terms of Use which prohibit commercial use of this site.  By continuing past this page, you agree to abide by these terms."  507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007) (emphasis omitted).

1  Users of ticketmaster.com had to affirmatively agree to the Terms of Use to set up an
2  account and purchase a ticket. *Id.* Indeed, in *Ticketmaster*, the defendant did not even
3  contest whether it was on notice of the Terms of Use, arguing instead that the Terms of
4  Use were too uncertain to be enforceable. *Id.*

5  In *Hubbert v. Dell Corp.*, the court held that the plaintiffs were bound by the Terms
6  and Conditions of Sale which included an arbitration agreement. 359 Ill. App. 3d 976, 984
7  (Ill. App. Ct. 2005). Again, however, at least three of the online forms the plaintiffs were
8  required to complete to make their purchases stated that "[a]ll sales are subject to Dell's
9  Term[s] and Conditions of Sale." *Id.* The *Hubbert* court reasoned that "[t]his statement
10 would place a reasonable person on notice that there were terms and conditions attached to
11 the purchase." *Id.* In other words, there was no doubt that plaintiffs were placed on notice
12 that there were specific Terms of Use that would apply.

13 Defendant also cites *Molnar v. 1-800-Flowers.com, Inc.*, No. CV 08-0542, 2008 WL
14 4772125 (C.D. Cal. Sept. 29, 2008), as supportive of the enforcement of Terms of Use in a
15 browsewrap agreement. However, the *Molnar* court decided the narrow issue of whether
16 the defendants' counterclaim could survive plaintiff's 12(b)(6) motion arguing that a
17 forum selection clause in a browsewrap agreement was unenforceable as a matter of law.
18 The court simply held that evidence that plaintiff had used the defendants' website
19 numerous times before was sufficient to withstand a motion to dismiss pursuant to Rule
20 12(b)(6). While the court declined to dismiss the case as a matter of law, it did not go so
21 far as to find the existence of a binding agreement.

22 /////
23 /////
24 /////
25 /////
26 /////
27 /////
28

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Compel Arbitration. The Court also DENIES AS MOOT Defendant's Motion to Stay litigation. Defendant may renew its motion if and when it files an appeal from this decision.

DATED: August 28, 2012

_____
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE